UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

MARTEZ ROMAL BICKHAM,

        Plaintiff,

v.

C. LOMAN et al.,

        Defendants.
_____/

Case No. 2:22-cv-182

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought (ECF No. 2) and was granted leave to proceed *in forma pauperis* (ECF No. 4). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]however, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Schroeder. The Court will also dismiss, for failure to state a claim, Plaintiff's claim regarding the violation of the MDOC's policies against remaining Defendants Loman, Hoover, and Vanderschaegen. Plaintiff's Fourteenth Amendment equal protection claims against Defendants Loman, Hoover, and Vanderschaegen remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LMF officials: Prison

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Counselor C. Loman, Residential Unit Manager E. Hoover, Correctional Officer R. Vanderschaegen, and Warden S. Schroeder. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that during his monthly review with the security classification committee in May of 2022, Assistant Deputy Warden Naeyaert (not a party) "instructed [Plaintiff] to obtain a unit porter job to demonstrate a positive behavior adjustment." (*Id.*, PageID.3.)[2] Subsequently, on June 1, 2022, at Plaintiff's six-month review, Defendant Schroeder "also told [Plaintiff] to obtain a job to show the necessary behavior adjustment" for consideration for release to general population. (*Id.*) Pursuant to these instructions, Plaintiff spoke with Correctional Officer Timonen (not a party) to see if Timonen "would hire [Plaintiff] as a unit porter, seeing that [Plaintiff] was on the required stage 6 under the incentive program rules." (*Id.*) Correctional Officer Timonen gave Plaintiff a unit porter request form for Plaintiff to complete and submit. (*Id.*) Plaintiff submitted the form, and Correctional Officer Timonen sent it to Defendant Loman. (*Id.*)

Several days later, Plaintiff saw that a white inmate from the Cedar Unit's integration program, which is "an unofficial protective custody" unit, was hired as the new porter. (*Id.*) Plaintiff states that the new porter "was not on the required incentive stage." (*Id.*) Plaintiff asked Defendant Loman why Plaintiff was not hired for the unit porter position, and Defendant Loman advised Plaintiff to speak with Defendant Vanderschaegen, explaining that Vanderschaegen "did all the hiring." (*Id.*) Plaintiff asked Defendant Vanderschaegen why he was not hired, and Defendant Vanderschaegen stated, "I don't want you on my shift; talk to 2-10 shift." (*Id.*)

---

[2] In this opinion, the Court corrects the spelling and punctuation in quotations from Plaintiff's complaint.

Subsequently, Correctional Officers Timonen and Riley (not parties) recommended that Plaintiff "be hired as the 2-10 shift unit porter." (*Id.*) Plaintiff again submitted the required form. (*Id.*) Defendant Loman told Plaintiff that he was not approved because he "had an ADD hold,"[3] which Plaintiff states "is not true and irrelevant." (*Id.*) Thereafter, "another white inmate was hired, again not on the required stage and also from Cedar Unit." (*Id.*) Plaintiff asked Defendant Loman why Plaintiff did not get the job, and Defendant Loman stated, "We don't want you. You are not going to get hired." (*Id.*)

On June 23, 2022, Plaintiff submitted a kite to Defendant Hoover, "asking if she would submit his application and to check if [Plaintiff] had an ADD hold." (*Id.*) Defendant Hoover responded, "No, not approved." (*Id.*) Plaintiff filed a grievance about the matter, "detailing the ongoing racial discrimination explaining how whites disproportionately get unit porter jobs over 'non-white' prisoners." (*Id.*, PageID.4.) Defendant Loman was assigned to investigate the issue, which Plaintiff contends was a violation of MDOC policy, and Defendant Loman's response was that "staff was unaware of [Plaintiff's] interest [in] becoming a porter and that other porters were chosen because of less serious reasons for segregation placement." (*Id.*) Plaintiff states that at the time that Defendant Loman responded to Plaintiff's grievance, "the current white porter also had an assault, as did previous white porters." (*Id.*)

On July 28, 2022, Plaintiff received Defendant Schroeder's step II grievance response, in which she stated that Plaintiff's file had been reviewed, and "it was determined that the severity of [Plaintiff's] placement was the reason [he] was not approved." (*Id.*) Thereafter, on August 4, 2022, and August 9, 2022, "white porters were hired, again not on the required stage 6." (*Id.*)

---

[3] In Plaintiff's complaint, he does not explain the significance of an "ADD hold."

5

Based on the foregoing allegations, Plaintiff alleges that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment and violated the MDOC's policies. As relief, Plaintiff seeks compensatory and punitive damages. (*See id.*, PageID.5.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

6

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Fourteenth Amendment Equal Protection Clause Claims

Plaintiff alleges that Defendants have violated the Equal Protection Clause of the Fourteenth Amendment by engaging in "racial discrimination." (Compl., ECF No. 1, PageID.4.) Specifically, Plaintiff claims that there is "a clear pattern of a preference for whites over 'non-whites' for unit porter jobs." (*Id.*)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

### 1. Defendant Schroeder

Plaintiff's allegations against Defendant Schroeder are limited. Plaintiff alleges that at Plaintiff's six-month review on June 1, 2022, Defendant Schroeder "told [Plaintiff] to obtain a job to show the necessary behavior adjustment" for consideration for release to general population. (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that on July 28, 2022, Defendant Schroeder responded to Plaintiff's step II grievance, advising that Plaintiff's file had been reviewed, and "it was determined that the severity of [Plaintiff's] placement was the reason [he] was not approved." (*Id.*, PageID.4.)

As an initial matter, the United States Court Appeals for the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Additionally, in unpublished decisions, the Sixth

8

Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (discussing that there is no constitutional right to a grievance procedure).

Furthermore, to the extent that Plaintiff seeks to hold Defendant Schroeder liable for the actions of her subordinates, government officials, such as Defendant Schroeder, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, as discussed above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

9

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993),

Here, Plaintiff fails to allege any facts showing that Defendant Schroeder encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's conclusory allegation of supervisory responsibility is insufficient to demonstrate that Defendant Schroeder was personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendant Schroeder engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against Defendant Schroeder.

### 2. Defendants Loman, Hoover, and Vanderschaegen

Although a prisoner, such as Plaintiff, "has no constitutional right to prison employment or a particular prison job," *McKinley v. Bowlen*, 8 F. App'x 488, 492 (6th Cir. 2001) (citation omitted), "prison officials cannot discriminate against [a prisoner] on the basis of [the prisoner's] age, race, or handicap, in choosing whether to assign [the prisoner] a job or in choosing what job to assign [the prisoner]." *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (citation omitted).

Here, liberally construing Plaintiff's allegations, as the Court is required to do, Plaintiff's allegations suggest that he is a member of a suspect class due to his race and that he was treated differently than others who were similarly situated because of his membership in this suspect class. Further, although Plaintiff has by no means proven his equal protection claim, Plaintiff has alleged

10

sufficient facts to suggest that Defendants Loman, Hoover, and Vanderschaegen were personally involved in at least some aspect of the hiring decisions for the prison jobs. Therefore, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's equal protection claims against Defendants Loman, Hoover, and Vanderschaegen may not be dismissed on initial review.

### B. Claims Regarding Violation of the MDOC's Policies

Plaintiff implies that Defendants violated the MDOC's policies. (*See* Compl., ECF No. 1, PageID.4.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, to demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Defendant Schroeder will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's claim regarding the violation of the MDOC's policies against remaining Defendants Loman, Hoover, and Vanderschaegen. Plaintiff's Fourteenth Amendment equal protection claims against Defendants Loman, Hoover, and Vanderschaegen remain in the case.

An order consistent with this opinion will be entered.

Dated:  January 24, 2023                    /s/ *Maarten Vermaat*
                                            Maarten Vermaat
                                            United States Magistrate Judge