UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARTEZ ROMAL BICKHAM, #777727,

        Plaintiff,

v.

R. VANDERSCHAEGEN, et al.,

        Defendants.
_____/

Case No. 2:22-cv-182

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R. & R.) addresses Defendant Vanderschaegen's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 21.)

Plaintiff — state prisoner Martez Romal Bickham — filed suit pursuant to 42 U.S.C. § 1983 on September 20, 2022. In his unverified complaint, Bickham asserts that, while he was incarcerated at Alger Correctional Facility (LMF) in Munising, Michigan, Defendants Corrections Officer (CO) Vanderschaegen, Prison Counselor (PC) Loman, Resident Unit Manager (RUM) Hoover, and Warden Schroeder refused to hire him as a unit porter based on racial discrimination.[1] (ECF No. 1, PageID.2-3.) More specifically, Bickham asserts that he was passed over several times for the

---

[1] All of Bickham's claims against Warden Schroeder were dismissed for failure to state a claim on January 24, 2023. (ECF No. 6, PageID.33.)

job by white inmates who were not on the required stage to be hired. Afterwards, Bickham filed a grievance alleging ongoing racial discrimination in the hiring process for unit porters, claiming that white prisoners disproportionately get jobs over "non-white" prisoners. (*Id.*, PageID.4.) The grievance respondents denied Bickham's grievance, explaining that he was not hired as a unit porter because of his current segregation placement, not because of his race. Additionally, the grievance respondents found no evidence of racial discrimination in the hiring process. (ECF. No. 22-3, PageID.102.)

Defendant Vanderschaegen now moves for summary judgment, asserting that Bickham did not properly exhaust his administrative remedies. (ECF No. 22.) CO Vanderschaegen notes that Bickham must exhaust all claims against him through Step III of the Michigan Department of Corrections (MDOC) grievance process before filing suit. And Vanderschaegen argues that Bickham did not exhaust his grievance remedies against him because Bickham did not name Vanderschaegen in his Step I grievance asserting discrimination in the hiring process. (*Id.*, PageID.83.) Instead, Bickham named Vanderschaegen for the first time in his Step II grievance appeal. In response, Bickham says that CO Vanderschaegen was put on sufficient notice to address the grievance at each step of the MDOC grievance process. Bickham argues that his initial grievance was against all staff involved in the hiring process for unit porters. (ECF No. 28, PageID.121.) Because CO Vanderschaegen was a part of the hiring process, he was properly grieved. (*Id.*)

2

The undersigned respectfully recommends that the Court grant CO Vanderschaegen's exhaustion-based motion for summary judgment. There are no genuine issues of material fact on this matter. Bickham did not name CO Vanderschaegen in his initial grievance form. The MDOC procedural rules require inmates to name *each person* involved in the issue being grieved in their initial grievance. MDOC PD 03.02.130 at ¶ S; *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As such, a grievant may only claim exhaustion as to the specifically named individuals at Step I after going through the entire grievance process. *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019).

## II. Factual Allegations

During his monthly review with the security classification committee in May of 2022, Bickham says that he was instructed to obtain a unit porter job to demonstrate positive behavior adjustment. On June 1, 2022, he was instructed by Warden Schroeder to obtain a job for the same reasons and that he would be considered for release to the general population. (ECF No. 1, PageID.3.) Bickham then spoke with CO Timonen during the 2:00-10:00 shift.[2] Timonen instructed Bickham to fill out a unit porter request form after being informed that he was on the required stage under the incentive program rules. Bickham filled out the form and then submitted it to PC Loman. A few days later, Bickham found out that a white porter[3] was hired for the position who was not on the required incentive stage. (*Id.*)

---

[2]  It is unclear whether Bickham is referring to an AM or PM shift.
[3]  It is implied by Bickham's complaint that he is a black prisoner.

3

Bickham then asked PC Loman why he was not hired for the position. Bickham was told to talk to CO Vanderschaegen as he "did all the hiring." Bickham spoke with Vanderschaegen about the position, and claims he was told by Vanderschaegen, "I don't want you on my shift, talk to the 2:00-10:00 shift." (*Id.*) He then went to CO Timonen and CO Riley, who recommended that he be hired as the 2:00-10:00 shift porter. PC Loman again rejected Bickham's application for the position based on an ADD hold.[4] Afterwards, another white inmate, who Bickham claims was not on the required stage, filled the porter job. Bickham once again asked PC Loman why he was not hired. According to Bickham, PC Loman responded, "we don't want you. You are not going to get hired." (*Id.*)

Bickham then went to RUM Hoover on June 23, 2022 to check if she would submit his application and to check if there was an ADD hold. Again, Bickham did not get approved for the job. (*Id.*) Bickham then filed a grievance claiming ongoing racial discrimination in the hiring process for unit porters. PC Loman investigated the grievance. (*Id.*, PageID.4.) According to Bickham, PC Loman should not have been assigned to investigate the issue per MDOC policy. PC Loman informed Bickham that the staff was unaware of Plaintiff's interest in becoming a porter and that the other porters were chosen because they had less serious offenses than Bickham. (*Id.*) Bickham claimed that the newly hired porter had an assault as did previous porters.

---

[4] In Bickham's complaint, he does not explain the significance of an 'ADD hold' or what it entails.

Continuing to show his interest in the job, Bickham then sought out CO Nebel, who submitted a porter request on his behalf. (*Id.*) Bickham claims that, on the same day, Warden Schroeder informed him that his Step II grievance appeal was denied. According to Warden Schroeder, Bickham was denied the porter job because he had a severe segregation placement. Bickham claims that shortly afterwards, white inmates were again hired for porter positions who were not on the required stage. According to Bickham, racial discrimination continued throughout the hiring and grievance process. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[5] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

---

[5] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter*

6

*v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at

737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id*. at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id*. at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id*. at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten

business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However,

9

when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[6]

---

[6] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

V.   Analysis

As set forth above, CO Vanderschaegen argues that the MDOC grievance process was available to Bickham to exhaust his racial discrimination claim, but Bickham did not pursue any relevant grievances relating to his claims against Vanderschaegen through Step III of the process.  (ECF No. 22, PageID.83-84.) Although Bickham did raise discrimination claims based on his repeated applications to the porter position in grievance LMF-22-06-0673-17e, he did not name CO Vanderschaegen in his Step I grievance.  Defendant attached a copy of Bickham's Step I grievance form, which is shown below.

[Michigan Department of Corrections Prisoner/Parolee Grievance Form, Grievance Identifier LMF-22-06-0673-17E, Date Received at Step I 6/29/22, Name: Martez Bickham, Number 777727, Institution LMF, Lock Number A-137, Date of Incident 6/22/22, Today's Date 6/27/22. Attempt to resolve: "I kited Rum Hoover and Warden Schroeder, no response." on 6/23/22.

Statement: "Per P.D. 03.03.130 paragraph M discrimination is prohibited and shall not serve as the basis for selecting which prisoners get a work detail. In Aspen unit hiring is based on race. 'Non-white' prisoners, specifically Black prisoners, rarely ever gets a unit porter or unit laundry job. White prisoners from the reintegration program, which is a covert protective custody program, is usually hired. I was refused the job even when 2-10 shift officers submitted an application. Reason being is because I'm a black, or 'Non white' prisoner. My segregation behavior is appropriate regularly. My work history is above average. Bec and the Warden, at my 6 month review, recommended that I get a work detail to show that I am ready for general population. To resolve this issue Rum Hoover or PC Loman should process my application to show proof there is not any discrimination based on race going on in Aspen unit. Also there should be equal number whites as Non whites with work details." Grievant's Signature.]

11

Bickham's Step I grievance form establishes that Bickham named only Hoover and Loman in his Step I grievance.

Bickham argues that grievance LMF-22-06-0673-17e exhausted his claim against CO Vanderschaegen anyway, pointing in part to the appeal form shown below.

> STEP II - Reason for Appeal
> Unresolved at STEP I. Per PD 03.02.130 paragraph U staff who is involved shall not participate in grievance investigation. Grievance is against respondent and reviewer, P/c Loman and RUM Hoover makes all final decisions as to who is hired in Aspen unit. C/o Timonen provided grievant with application, signed application, then gave the application to P/c Loman. P/c Loman told C/o Timonen grievant had an Add hold, which is untrue and irrelevant. You can still work with an Add hold. The current white porter has an assault as did previous white porters. There is obvious disparity, P/c Loman also implicated C/o Vanderschagen as an accomplice, Stating C/o Vanderschagen "did all the hiring". At this point, the only way to resolve this grievance is to either release prisoner to general population or transfer grievant to Macomb Correctional facility.

Bickham's Step II appeal begins by identifying Loman and Hoover as the subjects of his Step I grievance. Bickham then asserts that PC Loman "implicated" Defendant Vanderschaegen "as an accomplice" in the racial discrimination because PC Loman told Bickham that CO Vanderschaegen "did all the hiring." (ECF No. 22-3, PageID.104.) But even acknowledging that Bickham named CO Vanderschaegen in his Step II grievance appeal, Bickham's response to Defendant's motion for summary judgment is without merit.

A Step I grievance must include the name of each individual associated with the grievance issue. MDOC Policy Directive 03.02.130 at ¶ S. A Step I grievance that does not specifically identify the individuals associated with the grievance issue is therefore procedurally defective. If that procedural defect is clear from the face of the

12

grievance, but prison officials nevertheless consider the grievance on its merits, the procedural defect will not preclude the prisoner from filing a federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-325 (6th Cir. 2010). But if that procedural defect is not clear from the face of the grievance, as when a prisoner names specific individuals in their Step I grievance and later argues that he intended to grieve additional, unnamed individuals, a prison official's consideration of the grievance on its merits does not waive the procedural defect. *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019). By naming specific individuals, Bickham limited the exhaustion of the claims within his grievance to those individuals. *Reed-Bey* cannot be extended to this case as the grievance respondents could not reasonably construe Bickham's grievance to encompass "all staff involved in the hiring process." In his Step I grievance, Bickham named PC Loman and RUM Hoover, but did not name CO Vanderschaegen. Bickham's Step II appeal confirms as much. Therefore, Bickham did not exhaust his grievance claims against CO Vanderschaegen.

### VI.    Recommendation

The undersigned respectfully recommends that the Court grant Defendant Vanderschaegen's motion for summary judgment (ECF No. 21) and dismiss him from the lawsuit. There are no genuine issues of material fact bearing on exhaustion. The grievance records provided by CO Vanderschaegen establish that Bickham did not properly pursue any relevant grievances against CO Vanderschaegen through all three Steps of MDOC's grievance process. Therefore, Bickham did not properly

pursue the available administrative remedies before filing suit against CO Vanderschaegen.

If the Court accepts this recommendation, Bickham's racial discrimination claims against Defendants Loman and Hoover will remain.

Dated:  June 25, 2024                                    /s/ *Maarten Vermaat*
                                                                                  MAARTEN VERMAAT
                                                                                  U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).